UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------ X

SECURITIES AND EXCHANGE
COMMISSION,

               Plaintiff,

   -against-

MUSTAFA DAVID SAYID and NORMAN
T. REYNOLDS,

              Defendants.

------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/10/2018

No. 17 Civ. 2630 (JFK)

**OPINION & ORDER**

APPEARANCES

FOR SECURITIES AND EXCHANGE COMMISSION:
    Richard M. Harper II
    Michael J. Vito
    Dahlia Rin
    SECURITIES AND EXCHANGE COMMISSION

FOR DEFENDANT NORMAN T. REYNOLDS:
    Brian J. Poronsky
    Joseph Curtis Platt
    KATTEN MUCHIN ROSENMAN LLP

**JOHN F. KEENAN, United States District Judge:**

Before the Court is Defendant Norman T. Reynolds'

("Reynolds") motion to dismiss the Securities and Exchange

Commission's ("SEC") complaint, insofar as it alleges claims

against him, for failure to state a claim under Federal Rule of

Civil Procedure 12(b)(6). For the reasons that follow,

Reynolds' motion to dismiss is denied.

## I. Background

Unless otherwise noted, the following facts are drawn from

the complaint. Reynolds is an attorney who resides and is

1

licensed to practice law in Texas. (Compl. ¶ 18.) Defendant
Mustafa David Sayid ("Sayid") is an attorney who transacts
business in New York City. (Id. ¶ 16.) Beginning in 2010, Sayid
provided legal representation to two publicly traded shell
companies, Nouveau Holdings Ltd. ("Nouveau") and Striper Energy,
Inc. ("Striper"), during the SEC's investigation into an
offshore boiler room scheme involving Nouveau and Striper
(together, the "Shells"). (Id. ¶ 4.) Sayid exploited his
position as counsel to assume control of the Shells by
installing employees whom he could control. (Id. ¶¶ 4-5.) Sayid
used his controlling position to cause the Shells to unlawfully
issue millions of shares of stock to third parties, without the
required restrictive legends, who could then sell that stock and
kick back part of the profits to Sayid. (Id. ¶ 5.)

Beginning in January 2013, Sayid engineered a pump-and-dump
scheme in Nouveau's stock. (Id. ¶¶ 52-53.) Sayid instructed
"Person 1," then-President of Nouveau, to complete a 1 for 800
reverse split of Nouveau's common stock. (Id. ¶ 52.) The
reverse split, which was effective on April 20, 2013, reduced
the total number of shares of Nouveau issued and outstanding
from approximately 240 million to approximately 300,000 and
thereby reduced the number of shares in the hands of public
investors that were outside of Sayid's control. (Id.)

Sayid coordinated the scheme with two potential investors and stock promoters, Mitchell Brown ("Brown") and Michael Affa ("Affa"). (Id. ¶ 53.)  In May 2013, Sayid received at least $18,100 from Affa and Brown to prepare a three-way agreement (the "Nouveau Debt Settlement Agreement") whereby Sayid would assign $50,000 of the purported legal fees that Nouveau owed him to three Belizean entities controlled by Affa. (Id.)  Pursuant to the Nouveau Debt Settlement Agreement, Nouveau agreed to pay the assigned legal fees by way of the issuance of fifty million shares of stock to the Belizean nominee entities. (Id.)  Sayid participated in structuring the transaction through nominee entities that obscured the collective scheme to dump Nouveau's stock. (Id.)  The Nouveau Debt Settlement Agreement contained a number of misrepresentations and omissions, including a representation that it was made and entered into in July 2012 and an omission of the fact that the nominees were under common control. (Id. ¶ 54.)

As a general rule, the federal securities laws make it unlawful for any person to offer or sell securities unless such offering or sale is registered with the SEC or is exempt from registration under SEC rules. (Id. ¶ 38.)  SEC Rule 144 creates an exemption from the registration requirement for persons seeking to resell securities that are not otherwise exempt from the registration requirements of Section 5 of the Securities

Act. (Id. ¶ 39; 17 C.F.R. § 230.144.) For affiliates of an issuer, Rule 144 imposes a series of limitations that includes minimum holding periods (i.e., prohibiting the sale of shares unless the seller has held those shares for the requisite time frame), and volume restrictions (i.e., limiting the number of shares that may be sold). (Id.) These restrictions preclude or greatly constrict stock sales by those who control companies, preventing them from dumping large amounts of stock into the market. (Id.) If Rule 144's requirements are met, the seller is not considered an underwriter and may sell the securities pursuant to the Section 4(a)(1) exemption from Section 5 of the Securities Act for "transactions by any person other than an issuer, underwriter, or dealer." (Id. ¶ 41; 17 C.F.R. § 230.44(2).)

In July 2013, Sayid hired Reynolds to provide a legal opinion that the Nouveau Debt Settlement Agreement met the requirements of Rule 144 in order to persuade Nouveau's transfer agent to issue eight million shares of Nouveau stock to the Belizean nominee entities without an affiliate restrictive legend. (Id. ¶¶ 56-57.) At Sayid's direction, Reynolds drafted two opinion letters, dated August 9, 2013 and September 6, 2013, that falsely concluded that (1) the Nouveau Debt Settlement Agreement had been executed on July 17, 2012 and Sayid had accordingly held the subject securities for one year, as

required under Rule 144, and (2) the Nouveau Debt Settlement Agreement permitted issuance of fifty million shares to the Belizean nominees. (Id. ¶¶ 56-60.)

At the time Reynolds drafted his August 9, 2013 opinion letter, he had not received any executed agreement with the July 17, 2012 date. (Id. ¶ 60.) Sayid initially asked Reynolds to base his opinion on an unexecuted version of the Nouveau Debt Settlement Agreement, which bore the date September 25, 2012. (Id. ¶ 57.) Reynolds refused and told Sayid that the document failed to establish that Sayid had held the subject securities for one year, as would be required to qualify for the pertinent exemption under Rule 144. (Id. ¶ 58.) In response, Sayid represented to Reynolds that he had five executed versions of the Nouveau Debt Settlement Agreement bearing various dates: June 4, 2012, June 7, 2012, July 17, 2012, September 7, 2012, and September 25, 2012. (Id.) Reynolds did not receive an executed Nouveau Debt Settlement Agreement bearing the date July 17, 2012 until August 12, 2013, three days after he had drafted and sent to Sayid his August 9, 2013 opinion letter. (Id. ¶ 59.) Reynolds also was copied on emails from Sayid indicating that the Nouveau settlement agreement had not in fact been executed until August 2013. (Id. ¶ 60.)

Reynolds drafted his opinion letters while negotiating with Sayid to receive a share of the anticipated proceeds from the

sale of Nouveau stock issued pursuant to Reynolds' letters. (Id. ¶ 64.) On August 1, 2013, before Reynolds issued his first opinion letter, Reynolds asked about the status of Sayid's funding efforts. (Id.) Sayid responded via email "[t]hey are working on issuing the shares. Then we need your Rule 144 (?) legal opinion to convert the debt into equity and free up the shares. Sell the shares, get paid." (Id.) Although Reynolds requested a $5,000 fee from Sayid upon his receiving the proceeds from the sale of shares, Reynolds only received a total of $700 to draft the opinion letters. (Id.)

The SEC alleges that Reynolds knowingly or recklessly, ignored evidence that the Nouveau Debt Settlement Agreement was in fact fictitious in order to draft the false opinion letters that were necessary for Sayid, Brown, and Affa to conduct their pump-and-dump scheme. (Id. ¶¶ 56, 59-62.) Accordingly, Reynolds' opinion letters contained statements that he knew or should have known that he lacked a good faith basis for making. (Id. ¶ 62.) The complaint alleges that Reynolds violated Section 10(b) of the Exchange Act and Rule 10b-5 thereunder and Sections 17(a)(1) and (2) of the Securities Act on the basis of false statements he made in the opinion letters and his participation in Sayid's pump and dump scheme; and Sections 5(a) and 5(c) of the Securities Act by directly or indirectly engaging in the offer or sale of unregistered Nouveau securities

through drafting false opinion letters necessary to the distribution of shares, as well as his expectation of payment from Sayid's efforts to offer and sell illegally issued restriction-free shares. (<u>Id.</u> ¶¶ 74-79, 83-86; SEC Mem. of L. in Opp. to Mot. to Dismiss at 5-6.)

## II. Discussion

### A. Motion to Dismiss

Reynolds makes five principal arguments in his motion to dismiss: (1) failure to allege that Reynolds made false statements in his opinion letters, (2) failure to plead scienter as required to support the SEC's claims under Section 10(b), Rule 10b-5(b), and Section 17(a)(1), (3) failure to plead that Reynolds obtained money or property in connection with the offer or sale of securities as required to support the SEC's claim under Section 17(a)(2), (4) failure to allege participation in a deceptive scheme as required to bring claims under Rule 10b-5(a) and (c) and Section 17(a)(1), and (5) failure to allege that Reynolds was a necessary participant in the sale of unregistered securities, as required to bring a claim under Section 5.

### 1. Legal Standard

To state a cognizable claim under Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, the SEC must allege that Reynolds (1) made a material misrepresentation or a material omission as to which he had a duty to speak, or used a

fraudulent device; (2) with scienter; (3) in connection with the purchase or sale of securities. 15 U.S.C. § 78j(b); <u>SEC v. Pentagon Capital Mgmt. PLC</u>, 725 F.3d 279, 285 (2d Cir. 2013) (citations and quotations omitted).  To state a claim under Section 17(a)(1) of the Securities Act, the SEC must allege that Reynolds directly or indirectly used any device, scheme, or artifice to defraud in the offer or sale of securities. 15 U.S.C. § 77(q)(a)(1); <u>see also</u> <u>SEC v. Yorkville Advisors, LLC</u>, No. 12 CIV 7728 GBD, 2013 WL 3989054, at *2 (S.D.N.Y. Aug. 2, 2013).  To state a claim under Section 17(a)(2) of the Securities Act, the SEC must allege that Reynolds obtained money or property through misstatements or omissions about material facts in the offer or sale of securities. 15 U.S.C. § 77(q)(a)(2); <u>see also</u> <u>Yorkville Advisors</u>, 2013 WL 3989054, at *2.  The elements of a claim under Section 17(a) of the Securities Act in the offer or sale of a security are "essentially the same" as those required to prove fraud under Section 10(b). <u>SEC v. Monarch Funding Corp.</u>, 192 F.3d 295, 308 (2d Cir. 1999).  However, the SEC need only prove negligence, rather than scienter, to succeed on a claim under Section 17(a)(2). <u>SEC v. Ginder</u>, 752 F.3d 569, 574 (2d Cir. 2014).  To state a Section 5 claim, the SEC must allege "(1) lack of a registration statement as to the subject securities; (2) the offer or sale of the securities; and (3) the use of interstate

transportation or communication and the mails in connection with the offer or sale." SEC v. Cavanagh, 445 F.3d 105, 111 n.13 (2d Cir. 2006). Scienter is not an element of a Section 5 claim. SEC v. Czarnik, No. 10 CIV. 745 PKC, 2010 WL 4860678, at *11 (S.D.N.Y. Nov. 29, 2010).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Matson v. Bd. of Educ., 631 F.3d 57, 63 (2d Cir. 2011) (internal quotation marks omitted). On a motion to dismiss, a court must accept the factual allegations in the complaint as true and draw reasonable inferences in the plaintiff's favor. Tsirelman v. Daines, 794 F.3d 310, 313 (2d Cir. 2015).

In securities fraud cases, Rule 9(b) requires particularized allegations of the "circumstances constituting fraud." FED. R. CIV. P. 9(b). To comply with the requirements of 9(b), a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Rombach v. Chang,

355 F.3d 164, 170 (2d Cir. 2004) (citations and quotation marks omitted).  To plead scienter under Rule 9(b), the complaint must contain "facts that give rise to a strong inference of fraudulent intent." Acito v. IMCERA Grp., Inc., 47 F.3d 47, 52 (2d Cir. 1995).  A strong inference of fraudulent intent may be established by alleging facts sufficient to show (1) motive and opportunity to commit fraud, or (2) strong circumstantial evidence of conscious misbehavior or recklessness. Id. (citations and quotation marks omitted).

### 2.  Analysis

#### a.  Reynolds' False Statements in Opinion Letters

The SEC alleges that Reynolds' opinion letters contain three false statements in violation of Section 10(b) of the Exchange Act and Section 17(a)(2) of the Securities Act:  (1) the Nouveau Debt Settlement Agreement was executed on July 17, 2012, (2) the Nouveau Debt Settlement Agreement permitted the issuance of fifty million shares of Nouveau stock to the Belizean nominees, and (3) Reynolds implicitly represented that he had conducted a reasonable inquiry and had a reasonable basis upon which to base his opinion that the fictitious stock transaction met the requirements of Rule 144. (Compl. ¶ 60; SEC Mem. of L. in Opp'n to Mot. to Dismiss at 3.)  Reynolds claims none of these "misrepresentations" are actionable under Section 10(b) or Section 17(a)(2) because (1) the complaint establishes

that at least one of these misstatements was actually true, (2) Reynolds cannot be held liable for statements of opinion where he explicitly stated that he relied on factual representations from Sayid in forming his opinions, and (3) Sayid, not Reynolds, is the "maker" of the statements in the opinion letters. (See Def.'s Mem. of L. in Supp. of Mot. to Dismiss at 5-8, 14-16.)

The complaint alleges that Reynolds' opinion letters "contained various statements that Reynolds knew or should have known were false," including that the Nouveau Debt Settlement Agreement was executed on July 17, 2012, and that the Nouveau Debt Settlement Agreement permitted issuance of fifty million shares to the Belizean nominees. (Id. ¶ 60.) Reynolds argues that the SEC has failed to plead that the second statement was false because "the SEC's own complaint establishes that the [second misstatement] was true." (Def.'s Mem. of L. in Supp. of Mot. to Dismiss at 6.) Contrary to Reynolds' argument, the complaint alleges falsity because the Nouveau Debt Settlement Agreement, had it been genuinely made, would have permitted the issuance of only 62,500 shares after a reverse split of Nouveau stock in April 2013. (See Compl. ¶ 60.) Accordingly, drawing all reasonable inferences in Plaintiff's favor, the SEC has alleged that Reynolds made two false statements in his opinion letters.

Although the SEC argues in its opposition brief that
Reynolds made a third misstatement, the complaint alleges that
"[b]y signing the letters as an attorney offering a legal
opinion, Reynolds implicitly represented that he had conducted a
reasonable inquiry into the pertinent factual premises upon
which the transfer agent was expected to rely. . . . [when]
[i]n actuality, Reynolds had failed to conduct any such
inquiry." (Id.)  Although, as discussed below, Reynolds may be
held liable for false statements because "a statement of opinion
includes an implied representation that the speaker rendered the
opinion in good faith and with a reasonable basis," an implicit
representation that the speaker conducted a reasonable
investigation is not in itself a statement of fact or opinion.
SEC v. Greenstone Holdings, Inc., No. 10 CIV. 1302 MGC, 2012 WL
1038570, at *7 (S.D.N.Y. Mar. 28, 2012), aff'd in part sub nom.
SEC v. Frohling, 851 F.3d 132 (2d Cir. 2016) (emphasis added).
Thus, the SEC has only alleged two actionable misstatements
under Section 10(b) and Section 17(a)(2).

    Reynolds further argues that he is not liable for any
misstatements because the statements were "opinions that
turn[ed] out to be incorrect" and he explicitly stated in his
letters that he had relied on Sayid's factual representations in
forming his opinion. (Def.'s Mem. of L. in Supp. of Mot. to
Dismiss at 6-7.)  The SEC alleges that Reynolds knew or should

have known that these statements were false based on his knowledge of facts that presented "glaring questions of truthfulness," including, among other things, a series of emails that showed Sayid executed the Nouveau Debt Settlement Agreement in August 2013, not July 2012. (Compl. ¶¶ 60, 63.)  The Second Circuit has held that an attorney cannot "escape liability for fraud by closing his eyes to what he saw and could readily understand." SEC v. Frank, 388 F.2d 486 (2d Cir. 1968).  Even if Reynolds "had no actual knowledge of the opinions' falsity at the time he wrote or concurred in them . . . a statement of opinion includes an implied representation that the speaker rendered the opinion in good faith and with a reasonable basis." Greenstone, 2012 WL 1038570, at *6–7 (S.D.N.Y. Mar. 28, 2012). Further, there can be "no reasonable basis for an opinion without a reasonable investigation into the facts underlying the opinion." Id. at *7.  Accordingly, Reynolds cannot escape liability by claiming he relied entirely on Sayid where, according to the complaint, he not only failed to investigate the truth of the statements he signed, but also ignored evidence that directly contradicted the statements in his letters.

Finally, Reynolds argues that Sayid, not Reynolds, was the maker of any factual statements in the letters and, under Rule 10b-5(b) and Section 10(b), he cannot be held liable for statements made by another. (Def.'s Mem. of L. in Supp. of Mot.

to Dismiss at 14.)  Under Rule 10b-5, a statement is made by "the person or entity with the ultimate authority over the statement, including its content and whether and how to communicate it." Janus Capital Grp., Inc. et al. v. First Derivatives Traders, 564 U.S. 135, 142 (2011).  Reynolds contends that attorneys who draft opinion letters do not automatically exercise "ultimate authority" over statements and therefore, are not the "makers" of the statements in those letters.

The complaint alleges that Reynolds drafted and signed the opinion letters that contained false statements. (Compl. ¶¶ 56, 60.)  Courts have "consistently h[e]ld that signatories of misleading documents 'made' the statements in those documents, and so face liability under Rule 10b-5(b)." In re Smith Barney Transfer Agent Litig., 884 F. Supp. 2d 152, 163-64 (S.D.N.Y. 2012); see also SEC v. Subaye, Inc., No. 13 CIV. 3114 PKC, 2014 WL 448414, at *8 n.2 (S.D.N.Y. Feb. 4, 2014) (denying motion to dismiss where SEC alleged that CPA "drafted and prepared statements in [SEC] filings" and "also signed a certification . . . in which he personally attested to . . . the statements contained therein"); Orlan v. Spongetech Delivery Sys., Inc., Sec. Litig., No. 10-CV-4093 DLI JMA, 2012 WL 1067975, at *10 (E.D.N.Y. Mar. 29, 2012) (granting motion to dismiss and directing plaintiffs to amend their complaint to "include any

statements directly attributable to [the defendant] such as statements . . . signed by [the defendant]" to meet the <u>Janus</u> standard).  As the drafter and signatory of the alleged misstatements of the opinion letters, Reynolds had ultimate authority over those statements and is the "maker" under <u>Janus</u>. Thus, the SEC has alleged two misstatements made by Reynolds in his opinion letters under Section 10(b) and Section 17(a)(2).

### b.    Scienter

Reynolds argues that the SEC has not adequately pleaded scienter, as required to allege claims under Section 17(a)(1), Section 10(b), and Rule 10b-5. (Def.'s Mem. of L. in Supp. of Mot. to Dismiss at 10.)  To plead scienter, the SEC must allege facts that give rise to a strong inference of fraudulent intent. <u>Novak v. Kasaks</u>, 216 F.3d 300, 306 (2d Cir. 2000).  The SEC may do so either by alleging facts (a) showing that the defendant had both motive and opportunity to commit fraud, or (b) that constitute strong circumstantial evidence of conscious misbehavior or recklessness. <u>Id.</u> at 307.  An inference of recklessness may arise where a plaintiff alleges "[a]n egregious refusal to see the obvious, or to investigate the doubtful." <u>Id.</u> (quoting <u>Chill v. Gen. Elec. Co.</u>, 101 F.3d 263, 269 (2d Cir. 1996)).  Courts have found allegations of recklessness sufficient where a defendant had knowledge of facts or access to information that contradicts its public statements, or "failed

15

to review or check information that [it] had a duty to monitor, or ignored obvious signs of fraud." <u>SEC v. Czarnik</u>, No. 10 CIV. 745 PKC, 2010 WL 4860678, at *6 (S.D.N.Y. Nov. 29, 2010).

The SEC has adequately alleged facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness. Reynolds' opinion letters concluded that Sayid had held the subject securities for one year, as required to claim the relevant exemption under Rule 144, based on the executed Nouveau Debt Settlement Agreement dated July 17, 2012. (Compl. ¶ 59.) According to the complaint, at the time Reynolds signed the opinion letters, he was copied on an exchange of emails in August 2013 between Sayid and Person 1 indicating that the initial Nouveau Debt Settlement Agreement was in fact executed in August 2013, not July 2012. (<u>Id.</u> ¶ 60.) After Reynolds initially refused to write an opinion letter because the Nouveau Debt Settlement Agreement did not meet the one-year holding requirement of Rule 144, Sayid sent Reynolds five different unexecuted versions of the Nouveau Debt Settlement Agreement that contained different dates in June, July, and September 2012 for the same transaction. (<u>Id.</u> ¶ 58.) Reynolds did not receive an executed Nouveau Debt Settlement Agreement bearing the date July 17, 2012 until August 12, 2013, three days after he had drafted and sent to Sayid his first opinion letter. (<u>Id.</u> ¶ 59.)

Finally, the complaint alleges that Reynolds knew or should have known that Nouveau had undergone a reverse split in April 2013, after the July 17, 2012 date on the executed Nouveau Debt Settlement Agreement, which meant that the Nouveau Debt Settlement Agreement, had it been legitimately made, would have permitted the issuance of only 62,500 shares. (Id. ¶ 60.) Assuming these allegations to be true, the SEC has alleged that Reynolds had access to information that contradicted the statements in his opinion letters, including that Nouveau had undergone a reverse stock split in April 2013, and ignored "obvious signs of fraud," including evidence that the Nouveau Debt Settlement Agreement had not been executed in July of 2012, which indicated that Sayid had not held the subject securities for one year. These allegations are sufficient to plead reckless conduct and satisfy the scienter requirement. See, e.g., Greenstone, 2012 WL 1038570, at *7 (granting summary judgment in favor of SEC for its securities fraud claims where attorney failed to "investigate[] the truth of the statements he signed" in opinion letters and his "avoidance of the true facts" was "reckless at best"); Czarnik, 2010 WL 4860678, at *9 (finding the requisite scienter where SEC alleged that attorney was aware of information that should have alerted him to the likelihood that his representations in documents provided to transfer agent were false).

### c. Obtaining Money or Property in Connection with the Offer or Sale of Securities Under Section 17(a)(2)

To state a claim under Section 17(a)(2), the SEC must allege that (i) the defendant made a material misrepresentation or omission, (ii) in the offer or sale of securities, and (iii) the defendant "obtain[ed] money or property by means of the offerings" or sale. SEC v. Syron, 934 F. Supp. 2d 609, 637 (S.D.N.Y. 2013). To survive a motion to dismiss, the SEC must allege that Reynolds "actually obtained money or property by means of the untrue statements." SEC v. Glantz, No. 94 Civ. 5737 (CSH), 1995 WL 562180, at *5 (S.D.N.Y. Sept. 20, 1995). Reynolds argues that the SEC's Section 17(a)(2) claim fails because the complaint alleges that Reynolds was paid a flat fee for writing two opinion letters, but does not allege that his "compensation was affected in any non-trivial manner by making a false statement rather than a true statement." (Def.'s Mem. of L. in Supp. of Mot. to Dismiss at 17 (citing SEC v. Wey, 246 F. Supp. 3d 894, 904 (S.D.N.Y. 2017)).

The majority of courts have held that there is no requirement that the SEC allege a "fraud bonus"—i.e. that the defendant received additional compensation for participating in fraudulent conduct. SEC v. Cole, No. 12-CV-8167 RJS, 2015 WL 5737275, at *7 (S.D.N.Y. Sept. 19, 2015); see also SEC v. Tourre, No. 10-cv-3229 (KBF), 2014 WL 61864, at *4 (S.D.N.Y.

Jan. 7, 2014) (SEC need not allege that the defendant received any "fraud bonus" in addition to compensation from employer to establish liability under Section 17(a)(2)).  However, at least one court has held that "if the person would have earned the same fees or compensation regardless of whether the statement was false, a Section 17(a)(2) claim does not lie." Wey, 246 F. Supp. 3d at 904.  Under either standard, the SEC has alleged that Reynolds obtained money by means of his untrue statements under Section 17(a)(2).  According to the complaint, Sayid hired Reynolds to draft opinion letters that "falsely concluded that 8 million shares of Nouveau stock could be issued to the three nominee entities without restrictive legend." (Compl. ¶ 56.)  In an August 1, 2013 email to Reynolds, Sayid stated "we need your Rule 144 (?) legal opinion to convert the debt into equity and free up the shares." (Id. ¶ 64.)  Reynolds received a total of $700 for issuing two opinion letters that contained statements that he knew or should have known were false. (Id. ¶¶ 60, 64.) Thus, the SEC has adequately alleged a claim under Section 17(a)(2). See, e.g., Cole, 2015 WL 5737275, at *7 (denying defendant's motion for summary judgment on Section 17(a)(2) claims where it was undisputed that defendant received compensation for his work connected to false audit reports); Tourre, 2014 WL 61864, at *4 (denying defendant's motion for a new trial on Section 17(a)(2) claim where evidence showed that

he was paid for his work during the time period that he made

material misstatements and the work connected to the

misstatements was within his normal job responsibilities); SEC

v. Syron, 934 F. Supp. 2d 609, 638 (S.D.N.Y. 2013) (dismissing

SEC's Section 17(a)(2) claims where the complaint lacked any

allegation that the defendants' compensation was in any way

effected by the stock offerings).

### d. Participation in a Scheme Under Rule 10b-5(a) and (c) and Section 17(a)(1)

To state a claim that a defendant has engaged in a

deceptive or fraudulent scheme in violation of Rule 10b-5(a) and

(c) and Section 17(a)(1), a plaintiff must allege that the

defendant "(1) committed a manipulative or deceptive act, (2) in

furtherance of the alleged scheme to defraud, (3) scienter, and

(4) reliance." SEC v. Lee, 720 F. Supp. 2d 305, 325 (S.D.N.Y.

2010).  "[I]t is possible for liability to arise under both

subsection (b) and subsections (a) and (c) of Rule 10b–5 out of

the same set of facts, where the plaintiffs allege both that the

defendants made misrepresentations in violations of Rule 10b–

5(b), as well as that the defendants undertook a deceptive

scheme or course of conduct that went beyond the

misrepresentations." In re Alstom SA, 406 F. Supp. 2d 433, 475

(S.D.N.Y. 2005).  Reynolds argues that the SEC has failed to

allege "scheme liability" under the second prong because it has

not shown that Reynolds engaged in a deceptive scheme or course
of conduct that went beyond the alleged misrepresentations in
his opinion letters, and merely alleging generalized claims that
Reynolds provided assistance to Sayid do not meet Rule 9(b)'s
heightened pleading standard. (Def.'s Mem. of L. in Supp. of
Mot. to Dismiss at 17-19.)

The SEC has alleged that Reynolds participated in a scheme
to defraud that "went beyond the misrepresentations themselves."
In re Alstom SA, 406 F. Supp. 2d at 476.  The SEC alleges that
Reynolds' opinion letters were an integral part of Sayid's
overarching pump and dump scheme, and that "Reynolds knew or
should have known that his false representations would be used
to erroneously issue shares of Nouveau stock without restrictive
legends." (Id. ¶ 61.)  According to the complaint, Reynolds
drafted his opinion letters while negotiating with Sayid to
receive a share of the anticipated proceeds from the sale of
unregistered Nouveau stock issued pursuant to Reynolds' letters.
(Id. ¶ 64.)  On August 1, 2013, before Reynolds drafted his
first opinion letter, he asked about the status of Sayid's
funding efforts. (Id.)  Reynolds received an email from Sayid
stating "[t]hey are working on issuing shares.  Then we need
your Rule 144 (?) legal opinion to convert the debt into equity
and free up the shares.  Sell the shares, get paid." (Id.)  On
August 13, 2013, after he drafted his first opinion letter,

Reynolds asked Sayid about "the status of the sale of the [Nouveau] shares and the payment of my fee for the opinion letter." (Id.)  These allegations are sufficient to plead participation in a deceptive or fraudulent scheme in violation of Rule 10b-5(a) and (c) and Section 17(a)(1).

### e. Necessary Participant or Substantial Factor in the Sale Under Section 5

Under Section 5 of the Securities Act, it is unlawful, directly or indirectly, to publicly offer or sell unregistered stock unless the offering is covered by an exemption. SEC v. Sourlis, 851 F.3d 139, 143 (2d Cir. 2016).  A person not directly engaged in transferring title of the security, sometimes referred to as a "secondary actor," can be held liable if he or she "engaged in steps necessary to the distribution of [unregistered] security issues." Id.  Reynolds argues that as a secondary actor, he cannot be held liable because the SEC has failed to allege that he was a "necessary participant" and "substantial factor" in the sale. (Def.'s Mem. of L. in Supp. of Mot. to Dismiss at 19.)

As discussed above, the SEC alleges that Sayid hired Reynolds to provide legal opinions "[i]n order to get shares without restrictive legends into the hands of Affa and Brown" and Reynolds' false representations were "used to erroneously issue shares of Nouveau stock without restrictive legends."

(Compl. ¶¶ 56, 61.)  These allegations are sufficient to plead that Reynolds was a "necessary participant" in the sale of unregistered securities under Section 5 because "had [Reynolds] not provided [false] statements, the stock would not have issued." SEC v. Ramoil Mgmt., Ltd., No. 01 CIV. 9057 (SC), 2007 WL 3146943, at *7, *10 (S.D.N.Y. Oct. 25, 2007); see also Sourlis, 851 F.3d at 144-45 (attorney liable under Section 5 where attorney's opinion letter that contained "many" false statements provided the authority to issue unregistered shares without a restrictive legend).

## CONCLUSION

For the reasons stated above, Reynolds' motion to dismiss is DENIED in its entirety.  The Clerk of Court is respectfully directed to terminate the motion docketed at ECF No. 45.

**SO ORDERED.**

Dated:    New York, New York
          January **10**, 2018

_John F. Keenan_
John F. Keenan
United States District Judge