UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ x
:
U.S. SECURITIES AND EXCHANGE COMMISSION, :
:
          Plaintiff, :
:
    – against –  :   Case No. 17-CV-2630 (JFK)
:
MUSTAFA DAVID SAYID, ET AL., :
:
          Defendants. :
:
------------------------------------------------------------------------ x

AFFIRMATION OF MUSTAFA DAVID SAYID IN OPPOSITION
TO THE SEC'S MOTION FOR SUMMARY JUDGMENT

      MUSTAFA DAVID SAYID hereby affirms under the penalty of perjury that the following statements are true and correct, except where otherwise indicated:

      1.    I am one of the defendants in the referenced matter. I reside in Haworth, NJ. I am an attorney and am admitted to the practice of law before the courts of the State of New York, the courts of the Commonwealth of Pennsylvania, the courts of the Commonwealth of Massachusetts, the United States District Courts for the Southern, Eastern and Western Districts of New York and the Supreme Court of the United States. I maintain a law office (Sayid & Associates LLP) located at 408 West 57th Street, Suite 8E, New York, NY, 10019.

      2.    I submit this Affirmation in support of Defendant Mustafa David Sayid's Memorandum of Law in Opposition to the SEC's Motion for Summary Judgment, dated December 14, 2018, and Defendant Mustafa David Sayid's Response to Plaintiff U.S. Securities and Exchange Commission's Local Rule 56.1 Statement of Facts in Support of its Motion for Summary Judgment, dated December 14, 2018.

3. In connection with the discovery process herein, I sat for two full days of deposition (February 1, 2018 and March 13, 2018).  <u>See</u> SEC App. Tabs 1 and 24, respectively.[1]  Those two full days of deposition testimony resulted in more than 500 pages of questions and answers.  Additionally, I responded to more than twenty interrogatories propounded by the SEC.  I also produced thousands of pages of documents in response to document requests propounded by the SEC.

4. During my two full days of deposition, the SEC did not ask me certain questions that would have engendered responses relevant to the disputed facts at issue in its motion for summary judgment and its Local Rule 56.1 statement of facts.  Likewise, the SEC did not propound interrogatories to me that would have engendered responses relevant to the disputed facts at issue in its motion for summary judgment and its Local Rule 56.1 statement of facts.

5. I therefore submit this Affirmation to provide this Court with information that the SEC did not seek at deposition or in its interrogatories but that is relevant to (and in some cases dispositive with respect to) certain of the facts that the SEC claims in its motion for summary judgment are not in dispute (but which facts are, in fact, in dispute, as detailed in my memorandum of law in opposition to the SEC's motion for summary judgment and my response to the SEC's Rule 56.1 statement of facts).  Indeed, the information provided in this affirmation will permit me to more accurately and precisely respond to and contest: (A) the assertions in the SEC's memorandum of law in support of it motion for summary judgment (the "SEC Mem.) that no genuine issues as to any material facts exist; and (B) the purported facts set forth in the SEC's Rule 56.1 statement of facts.  Thus, the information provided in this Affirmation will permit me to more fully support my request that this Court deny the SEC's motion for summary judgment against me in its entirety.

---

[1] "SEC App." refers to the SEC's "Appendix," which was submitted with its motion for summary judgment.

2

6. In an attempt at suggesting that I somehow controlled Nouveau Holdings, Ltd. (formerly known as Spectrum Acquisition Holdings Corp.) ("Nouveau"), the SEC's Statement of Fact No. 3 states that Nouveau's 2013 Annual Report listed its principal place of business at my law office, which is located at 408 West 57th Street, Suite 8E, New York, NY, 10019.  In fact, in November 2013 Dale Henry abruptly resigned his position as Nouveau's President.  Because Nouveau's corporate documents were stored at my law office, and because Nouveau did not have funds to open a formal location elsewhere, Nouveau listed its address in its November 2013 Annual Report as my law office.  As reflected in its 2014 Annual Report, Nouveau moved its formal address from my law office to 888C Eight Avenue, Suite 601, New York, NY, 10019.

7. The SEC's Statement of Fact No. 15 suggests that on May 30, 2012 I sent an e-mail to certain persons who were "in nominal positions of control" of certain companies (defined in the SEC's Rule 56.1 Statement of Facts as the "Geranio Public Companies").  I did not believe at that time that the recipients of my May 30, 2012 e-mail were "in nominal positions of control" of such companies.  Rather, I worked with such individuals on an almost daily basis and believed that they, in fact, were in actual positions of control of such companies.

8. The SEC asserts throughout the SEC Mem. and the SEC's Rule 56.1 Statement of Facts that no genuine issues of material fact exist based principally on e-mail communications between me and, for example, Mr. Henry (Nouveau's former President).  In addition to exchanging e-mails with him, I spoke with Mr. Henry on the telephone on a virtually daily basis (usually multiple times a day).  In asking me questions at deposition about my e-mail communications with Mr. Henry, however, the SEC often did not also ask me about my telephone conversations with Mr. Henry concerning (among other things) the subject(s) of such e-mails.  Thus, the SEC only has (and is only able to present) a partial picture of the communications I had with Mr. Henry concerning topics that may have been the subject(s) of e-mail exchanges.

9. By way of example only, the SEC's Statement of Facts Nos. 18-21 purport to describe certain e-mail communications between me and Mr. Henry concerning the search for aged Nouveau corporate debt that could potentially be converted into unrestricted, free-trading stock as part of a potential transaction pursuant to which Nouveau might merge with or acquire another company. The SEC's description of those communications with Mr. Henry does not present a full and complete picture of such communications because the SEC did not ask me at deposition about telephone conversations I had with Mr. Henry concerning same. If the SEC had asked about those telephone conversations, it would have learned that (among other things) Mr. Henry assisted me with the Debt Settlement Agreement at issue herein, the conversion rate applicable to that Debt Settlement Agreement and the price and terms of that Debt Settlement Agreement.

10. Likewise, the SEC's Statement of Fact No. 22 asserts that I negotiated a transaction with two individuals (Michael Affa and Mitchell Brown) who represented certain Belizean entities "that were interested in acquiring debt of a public company that could be converted to stock." If the SEC had asked me more detailed questions about those negotiations, it would have learned that the interests of Messrs. Affa and Brown evolved over time. They initially expressed an interest in investing monies in public companies; then they expressed an interest in investing in public companies through the purchase of debt; and then they expressed an interest in investing in public companies through the purchase of convertible debt. I believe that such additional details are relevant to the intent of Messrs. Affa and Brown with respect to the broader securities fraud scheme that they purportedly perpetrated, as detailed in the SEC Mem.

11. The same goes for the SEC's Statement of Fact No. 34, which asserts that "between April 2012 and August 2013, [Mr. Sayid] had informed Dale Henry that debt settlement agreement negotiations were 'ongoing' <u>but not more than that</u>" (emphasis added). While that quotation accurately reflects what I said at deposition, the SEC omits to disclose that I also

testified that I had many conversations with Mr. Henry between April 2012 and August 2013, some relating to and some not relating to the Debt Settlement Agreement.  In other words, the SEC inaccurately portrays my relationship with Mr. Henry in that that relationship involved e-mails concerning and regular telephone communications about the Debt Settlement Agreement (and other matters relating to Nouveau).  The following is the relevant exchange at my deposition (SEC App. Tab 24, Sayid Depo. – Day 2 at 426:5-427:1):

> Q: Between April of 2012 when you had this conversation with Dale Henry and August of 2013, did you have any more conversations with Dale Henry about the debt settlement agreements?
> A: I'm sure I did, I just don't recall specifically, but, you know –
> Q: Generally, what did you talk to him about with regard to the debt settlements agreement at that time?
> A: Not necessarily regarding debt settlement agreements, but just more that the investors are looking into the companies, were looking to do a debt settlement.
> Q: Let's focus. I'm asking particularly about these debt settlement agreements. Between April of 2012 and August of 2013, what did you talk to Dale Henry about with regard to these debt settlement agreements?
> A: That they were ongoing. That's it. And nothing more.
> Q: Why nothing more?
> A: Because it didn't matter to, who he owed the debt to. He acknowledged that the debt is mine.

12. The SEC's Statement of Fact No. 24 asserts that I drafted the Debt Settlement Agreement at issue herein, pursuant to which (among other things) I would sell certain debt owed to me by Nouveau to three Belizean entities that Messrs. Affa and Brown represented.  Thomas Boccieri, Esq., an attorney with whom I had previously worked, instructed me on the drafting and preparation of that Debt Settlement Agreement because I had never drafted or prepared a Debt Settlement Agreement like the Draft Settlement Agreement at issue herein.  See: (A) SEC App. Tab 1, Sayid Depo. – Day 1 at 174:4-176:2, 176:10-23; (B) SEC App. Tab 24, Sayid Depo. – Day 2 at 410:5-411:16.  Additionally, the SEC did not ask me at deposition if anyone assisted me in negotiating the terms of the Debt Settlement Agreement.  See SEC Statement of Facts Nos. 24-27.

If the SEC had done so, it would have learned that Mr. Henry assisted me in negotiating the Debt Settlement Agreement and that I sought his advice and assistance because I believed that he was a shrewd businessman.

13.  The SEC's Statement of Fact No. 28 asserts that I "decided the conversion rate that Nouveau would issue securities for [my] law firm's debt." While technically accurate because it was my Nouveau debt that was being sold to the Belizean entities, the SEC failed to ask me at deposition about the process by which I reached that conversion rate. If the SEC had done so, it would have learned that I consulted with Mr. Henry (Nouveau's president) on numerous occasions and certain other attorneys with whom I had previously worked, and that I chose that conversion rate based on the conversion rates associated with prior conversions of Nouveau debt undertaken by Mr. Henry (transactions in which I was not involved).

14.  The SEC's Statement of Fact No. 30 asserts that through June 2013 I was still sending Messrs. Affa and Brown multiple drafts of the Debt Settlement Agreement. At deposition, the SEC did not ask me why I created such multiple drafts. If the SEC had asked, it would have learned that I created multiple drafts of the Debt Settlement Agreement because Messrs. Affa and Brown made changes to the deal structure that required new drafts, such as changing the names of the Belizean entities that would be acquiring my Nouveau debt, changing the addresses of such Belizean entities and/or changing the names of the authorized representatives of such Belizean entities. Obviously, I had to create new drafts of the Debt Settlement Agreement to reflect such changes, which Messrs. Affa and Brown communicated to me.

15.  The SEC's Statement of Fact Nos. 31-34 assert that the Debt Settlement Agreement was not finalized or executed as of June 13, 2013 and that I did not "not receive the final go ahead from Affa . . . until August 2013." That statement is not entirely accurate because (among other things) the Debt Settlement Agreement was finalized and executed by myself and the Belizean

6

entities each time that a new Debt Settlement Agreement was created because I believed that each such Debt Settlement Agreement would be the final Debt Settlement Agreement, facts about which the SEC did not inquire at my deposition.

16. The SEC's Statement of Fact No. 48 asserts that I told Mr. Henry in my July 29, 2013 e-mail (SEC App. Tab 35) that I had "an executed copy" of the Debt Settlement Agreement "that I shall forward." Because the SEC did not inquire as to my telephone calls with Mr. Henry concerning the contents of that July 29, 2013, it did not learn that, upon receipt of that e-mail, Mr. Henry, on the very same day, asked me to send him a copy of the Debt Settlement Agreement, which I did on August 2, 2013. (SEC App. Tab 25.)

17. The SEC's Statement of Fact No. 57 reports on an August 5, 2013 e-mail from Mr. Reynolds to me concerning the Rule 144 opinion letter that I asked Mr. Reynolds to write. (SEC App. Tab 37.) In that e-mail, Mr. Reynolds wrote that "you [Mr. Sayid] have not held the securities for one year." As detailed in the Debt Settlement Agreement, I was selling debt, not stock, to the Belizean entities. Thus, Mr. Reynolds' statement in his August 5, 2013 e-mail to me was incorrect. Additionally, if the SEC had inquired of my telephone call with Mr. Reynolds concerning same, it would have learned that I told Mr. Reynolds on the phone that I was selling debt, not stock, to the Belizean entities and that Mr. Reynolds was attempting to find a way for his proposed Rule 144 opinion letter to "work" based on the information I had provided to him.

18. The SECs Statement of Fact No. 73 asserts that I told Mr. Reynolds to use the July 17, 2012 Debt Settlement Agreement as the basis for his Rule 144 opinion letter. The SEC, however, did not ask me at deposition about my telephone conversations with Mr. Reynolds concerning selection of the Debt Settlement Agreement upon which to base his Rule 144 opinion letter. If the SEC had done so, it would have learned that Mr. Reynolds and I spoke on numerous occasions about

Mr. Reynolds' anticipated Rule 144 opinion letter and that Mr. Reynolds stated that he decided to base his Rule 144 opinion letter on the July 17, 2012 Debt Settlement Agreement.

Dated: December 13, 2018
       Haworth, NJ

                                      _____
                                          Mustafa David Sayid