## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| U.S. SECURITIES AND EXCHANGE COMMISSION,<br><br>             Plaintiff,<br><br>      v.<br><br>MUSTAFA DAVID SAYID, KEVIN JASPER, and NORMAN T. REYNOLDS,<br><br>             Defendants. | )<br>)<br>)<br>)<br>)<br>)  Case No. 1:17-cv-2630 (JFK)<br>)<br>)<br>)<br>)<br>) |

## SECURITIES AND EXCHANGE COMMISSION'S RESPONSE TO REYNOLDS STATEMENT OF ADDITIONAL UNDISPUTED MATERIAL FACTS

Plaintiff Securities and Exchange Commission submits this statement in response to defendant Norman Reynolds's statement of additional material facts.  Although Reynolds captions his statement as additional "undisputed" facts, the Commission understands Reynolds position as contending that these purported facts created a genuine issue to be tried.  *See* LR 56.1(b) (allowing opposing party to submit "additional material facts as to which it is contended that there exists a genuine issue to be tried.").  For the reasons stated below, the Commission contends that these facts do not create a genuine dispute of material fact to be tried concerning Reynold's liability.

## FACT NO. 1

Reynolds performed legal work for several companies at Sayid's request prior to the Nouveau opinion letters at issue.  Reynolds Ex. 9, Reynolds Decl. ¶ 3.

## SEC RESPONSE TO FACT NO. 1

The Commission does not dispute that Reynolds performed work for other companies at Sayid's request, but there is no evidence that this work assisted Reynolds in determining the

real effective date of the Nouveau debt settlement agreement. Reynolds testified that his basis for picking the one effective date of the Nouveau debt settlement agreement among the five purported execution dates that Sayid had presented to him was to ask Sayid which date he would prefer to use. SEC App., Tab 34, Reynolds Depo., 156:14-158:3; *see also* Reynolds Resp. to SEC SoF, ¶73 ("Reynolds does not dispute . . . [he] asked Sayid which date he would prefer to use.").

## FACT NO. 2

One of those engagements required Reynolds to write an analysis to the Depository Trust Company ("DTC") regarding a trading chill placed on Nouveau's stock. Reynolds Ex. 32, NR0013728. Reynolds' opinion letter in that engagement described material reviewed in the context of that engagement, and concludes that the shares in question were validly issued under the federal securities laws. *Id.*

## SEC RESPONSE TO FACT NO. 2

The Commission does not dispute that Reynolds wrote an analysis to DTC or the content of the letter cited in Reynolds Ex. 32. There is no evidence, however, that this work assisted Reynolds in determining the real effective date of the Nouveau debt settlement agreement. Reynolds testified that his basis for picking the one effective date of the Nouveau debt settlement agreement among the five purported execution dates that Sayid had presented to him was to ask Sayid which date he would prefer to use. SEC App., Tab 34, Reynolds Depo., 156:14-158:3; *see also* Reynolds Resp. to SEC SoF, ¶73 ("Reynolds does not dispute . . . [he] asked Sayid which date he would prefer to use.").

## FACT NO. 3

The DTC agreed with Reynolds' analysis and removed the trading chill.

Reynolds Ex. 33, SEC-SayidM-E-0009763.

### SEC RESPONSE TO FACT NO. 3

The Commission does not dispute the letter from DTC cited as Reynolds Ex. 33. There is no evidence, however, that this letter assisted Reynolds in determining the real effective date of the Nouveau debt settlement agreement. Reynolds testified that his basis for picking the one effective date of the Nouveau debt settlement agreement among the five purported execution dates that Sayid had presented to him was to ask Sayid which date he would prefer to use. SEC App., Tab 34, Reynolds Depo., 156:14-158:3; *see also* Reynolds Resp. to SEC SoF, ¶73 ("Reynolds does not dispute . . . [he] asked Sayid which date he would prefer to use.").

### FACT NO. 4

Sayid is licensed to practice law in New York, Massachusetts, and Pennsylvania. SEC Tab 2, Harper Decl. ¶ 2; Reynolds Exs. 1 and 2.

### SEC RESPONSE TO FACT NO. 4

The Commission does not dispute this fact, but it does not create a dispute of material fact concerning Reynolds' necessary participation in the resale of Nouveau stock without restriction or his lack of investigation into Sayid's representations concerning the effective date of the debt settlement agreement.

### FACT NO. 5

Reynolds has no recollection of ever meeting Mitchell Brown. Reynolds Ex. 9, Reynolds Decl. ¶ 4.

### SEC RESPONSE TO FACT NO. 5

The Commission does not dispute this fact, but it does not create a dispute of material fact concerning Reynolds' necessary participation in the resale of Nouveau stock without

restriction or his lack of investigation into Sayid's representations concerning the effective date of the debt settlement agreement.

<strong><u>FACT NO. 6</u></strong>

Reynolds has no recollection of ever meeting Michael Affa. Reynolds Ex. 9, Reynolds Decl. ¶ 5.

<strong><u>SEC RESPONSE TO FACT NO. 6</u></strong>

The Commission does not dispute this fact, but it does not create a dispute of material fact concerning Reynolds' necessary participation in the resale of Nouveau stock without restriction or his lack of investigation into Sayid's representations concerning the effective date of the debt settlement agreement.

<strong><u>FACT NO. 7</u></strong>

Reynolds has no recollection of ever meeting Andrew Affa. Reynolds Ex. 9, Reynolds Decl. ¶ 6.

<strong><u>SEC RESPONSE TO FACT NO. 7</u></strong>

The Commission does not dispute this fact, but it does not create a dispute of material fact concerning Reynolds' necessary participation in the resale of Nouveau stock without restriction or his lack of investigation into Sayid's representations concerning the effective date of the debt settlement agreement.

<strong><u>FACT NO. 8</u></strong>

Reynolds has no recollection of ever meeting an individual named Zeeshan. Reynolds Ex. 9, Reynolds Aff. ¶ 7.

<strong><u>SEC RESPONSE TO FACT NO. 8</u></strong>

The Commission does not dispute this fact, but it does not create a dispute of material

fact concerning Reynolds' necessary participation in the resale of Nouveau stock without restriction or his lack of investigation into Sayid's representations concerning the effective date of the debt settlement agreement.

## FACT NO. 9

Sayid, in concert with Dale Henry, Mitch Brown, and Michael Affa, conceived of a corporate transaction between Nouveau and a company called B3 Square in 2013. Reynolds does not receive and is not copied on any correspondence between or among these individuals related to this corporate transaction. Reynolds Ex. 10, Brown Dep. Ex. 169 (email from Sayid to group including Brown, Affa, and Henry discussing "acquisition agreements between SPAH (or newco), and the new IBC for the operating company in Belize"); Reynolds Ex. 12, Sayid Dep. Ex. 51 (correspondence discussing terms of the proposed deal); Reynolds Ex. 11, Sayid Dep. Ex. 50 (Sayid explaining to principal of B3 Square explaining that Nouveau "just did the reverse split, name and symbol change – so we have a nice clean slate to work with"); Reynolds Ex. 13, Brown Dep. Ex. 170 (Sayid emailing Henry, Kevin Jasper, Brown, and Affa with confirmation of the company's name change from Spectrum to Nouveau); Reynolds Ex. 15, Brown Dep. Ex. 172 (Sayid emailing letter of intent and copying Henry, Brown, and Affa).

## SEC RESPONSE TO FACT NO. 9

The Commission does not dispute this fact, but it does not create a dispute of material fact concerning Reynolds' necessary participation in the resale of Nouveau stock without restriction or his lack of investigation into Sayid's representations concerning the effective date of the debt settlement agreement.

### FACT NO. 10

At the time I wrote two opinion letters for Nouveau Holdings Ltd. in August and September 2013, I was not aware of the contemplated corporate transaction between Nouveau and B3 Square. Reynolds Ex. 9, Reynolds Decl. ¶ 8.

### SEC RESPONSE TO FACT NO. 10

The Commission does not dispute that Reynolds claims to be unaware of the B3 Square transaction, however this fact does not create a dispute of material fact concerning Reynolds' necessary participation in the resale of Nouveau stock without restriction or his lack of investigation into Sayid's representations concerning the effective date of the debt settlement agreement.

### FACT NO. 11

The Belizean nominee entities were controlled by Michael Affa. SEC Tab 51, Brown Tr. 174–179.

### SEC RESPONSE TO FACT NO. 11

The Commission does not dispute this fact, but it does not create a dispute of material fact concerning Reynolds' necessary participation in the resale of Nouveau stock without restriction or his lack of investigation into Sayid's representations concerning the effective date of the debt settlement agreement.

### FACT NO. 12

There were no plans to pay Reynolds any of the proceeds of the Sayid's scheme to sell unregistered shares of Nouveau stock. SEC Tab 51, Brown Tr. 226–228.

### SEC RESPONSE TO FACT NO. 12

Although the Commission disputes the accuracy of this fact, it does not create a dispute

of material fact concerning Reynolds' necessary participation in the resale of Nouveau stock without restriction or his lack of investigation into Sayid's representations concerning the effective date of the debt settlement agreement. While proof of plans for Reynolds to profit would further support the Commission's claims, the lack of it does not create a material dispute preventing Reynold's liability. With regard to the inaccuracy of the stated fact, Sayid told Reynolds by email that Reynolds would be paid once his Rule 144 opinion letters allowed the sale of shares. Reynolds sought payment of unpaid bills from Sayid, which Sayid told Reynolds would be paid from the sale of shares following Reynolds issuance of a Rule 144 letter, and Reynolds followed up to pursue money from those sales. *See* SEC App., Tab 43, Reynolds IT – Day Two, 276:10-283:15 (admitting to sending email to Sayid in August 2013 seeking information about "funding efforts" to get paid, and Sayid responding "we need your Rule 144 legal opinion to convert the debt to equity and free up the shares," and "sell shares get paid."); *id.*, 341:4-8 (admitting to sending email to Sayid on September 7, 2013 telling Sayid to wire payment "when you receive your funds next week").

## FACT NO. 13

None of the proceeds of the scheme were in fact paid to Reynolds. SEC Tab 51, Brown Tr. 226–228.

## SEC RESPONSE TO FACT NO. 13

In the cited testimony, Brown details who he understood received proceeds from the sale of shares. Brown further testified that he was aware that Sayid used his share of the proceeds to pay others. The Commission does not dispute what Brown testified to. Reynolds does not cite any evidence showing that he did not ultimately receive some of this money. This stated fact does not create a dispute of material fact concerning Reynolds' necessary

participation in the resale of Nouveau stock without restriction or his lack of investigation into Sayid's representations concerning the effective date of the debt settlement agreement.

**FACT NO. 14**

The proceeds of scheme were paid to Sayid, Dale Henry, Zeeshan, Andrew Affa, and the persons responsible for the "marketing campaign." SEC Tab 51, Brown Tr. 226–228; Reynolds Ex. 14, Brown Dep. Ex. 171 (Sayid email listing proposed "use of proceeds from the potential first round of financing").

**SEC RESPONSE TO FACT NO. 14**

In the cited testimony, Brown details who he understood received proceeds from the sale of shares. Brown further testified that he was aware the Sayid used his share of the proceeds to pay others. The Commission does not dispute what Brown testified to. Reynolds Ex. 14 shows proposed uses for proceeds, but does not show how the proceeds were actually distributed. This evidence does not create a dispute of material fact concerning Reynolds' necessary participation in the resale of Nouveau stock without restriction or his lack of investigation into Sayid's representations concerning the effective date of the debt settlement agreement.

**FACT NO. 15**

On July 29, 2013, Sayid contacted Reynolds to ask whether Reynolds would accept an engagement to issue "2 Debt to Equity Opinions" regarding certain shares of Spectrum stock, which had by then changed its name to Nouveau. Sayid attached to that email a document titled "SPAH_Debt_Sett_Agmt_092512.pdf." SEC Tab 35, Reynolds Dep. Ex. 144. That version of the agreement has an effective date of September 25, 2012, and its title indicates it related to Spectrum (SPAH was the company's ticker symbol before it changed its name). *Id*.

8

### SEC RESPONSE TO FACT NO. 15

The Commission does not dispute this fact, but it does not create a dispute of material fact concerning Reynolds' necessary participation in the resale of Nouveau stock without restriction or his lack of investigation into Sayid's representations concerning the effective date of the debt settlement agreement.

### FACT NO. 16

On July 30, 2013, Reynolds asked Sayid whether he possessed the pertinent stock certificates. Reynolds Ex. 16, NR0001111.

### SEC RESPONSE TO FACT NO. 16

The Commission does not dispute this fact, but it does not create a dispute of material fact concerning Reynolds' necessary participation in the resale of Nouveau stock without restriction or his lack of investigation into Sayid's representations concerning the effective date of the debt settlement agreement.

### FACT NO. 17

On August 5, 2013, Reynolds emailed Sayid for "an opinion that Nouveau Holdings, Ltd. has never been a 'shell,'" which is another of Rule 144's requirements. Reynolds Ex. 17, NR0000404. Sayid replied within the hour that he would "call Dale [Henry] and have that legal opinion forwarded to you." *Id*.

### SEC RESPONSE TO FACT NO. 17

The Commission does not dispute this fact, but it does not create a dispute of material fact concerning Reynolds' necessary participation in the resale of Nouveau stock without restriction or his lack of investigation into Sayid's representations concerning the effective date of the debt settlement agreement.

## FACT NO. 18

On August 6, 2013 at 8:06 am, Sayid had requested Henry provide him with documentation related to Nouveau's shell status. Henry replied with relevant information that was out of date, and indicated as such in his email back to Sayid. Reynolds Ex. 18, Sayid Dep. Ex. 7.

## SEC RESPONSE TO FACT NO. 18

The Commission does not dispute this fact, but it does not create a material dispute of fact concerning Reynolds' necessary participation in the resale of Nouveau stock without restriction or his lack of investigation into Sayid's representations concerning the effective date of the debt settlement agreement.

## FACT NO. 19

On August 6, 2013 at 9:41:44, Sayid purported to forward Henry's response to Reynolds, describing the content as "documents for the legal opinion." Sayid's email to Reynolds omits Henry's statement that the attached documents related to Nouveau's "last 504 funding which was over a year ago." Reynolds Ex. 19, Sayid Dep. Ex. 8.

## SEC RESPONSE TO FACT NO. 19

The Commission does not dispute this fact, but it does not create a material dispute of fact concerning Reynolds' necessary participation in the resale of Nouveau stock without restriction or his lack of investigation into Sayid's representations concerning the effective date of the debt settlement agreement.

## FACT NO. 20

Reynolds emailed Sayid on August 5, 2013, to inform Sayid that Rule 144's one-year holding period was not met based on the information Sayid had provided to him and he

would not offer an opinion that the contemplated sale complied with the rule. Reynolds Ex. 20, Reynolds Dep. Ex. 146.

## SEC RESPONSE TO FACT NO. 20

The Commission does not dispute this fact, but it does not create a material dispute of fact concerning Reynolds' necessary participation in the resale of Nouveau stock without restriction or his lack of investigation into Sayid's representations concerning the effective date of the debt settlement agreement.

## FACT NO. 21

Sayid responded by forwarding to Reynolds an opinion letter previously authored by a different attorney, who had opined that Sayid's retainer letter with a different issuer counted as a security and "was presented to two different transfer agents and passed with flying colors." Reynolds Ex. 21, NR0000887. Reynolds disagreed with the other attorney's analysis and in an August 6, 2013, email, Reynolds stated that he "could write an opinion on September 25, 2013," but if Sayid wanted "an opinion now," he should contact the other attorney. *Id*. Sayid persisted, stating that he "thought [the other attorney's] reasoning was quite sound as did two different transfer agents and their attorneys." *Id*. Reynolds declined to offer an opinion for a third time; he wrote to Sayid, "I do not feel comfortable in his conclusion about the definition of a security. I feel it is a real stretch." *Id*.

## SEC RESPONSE TO FACT NO. 21

The Commission does not dispute most of this statement of fact, but the quoted language about passing with flying colors does not appear in the document cited. In any event, this statement of fact does not create a material dispute of fact concerning Reynolds' necessary participation in the resale of Nouveau stock without restriction or his lack of investigation into

Sayid's representations concerning the effective date of the debt settlement agreement.

**FACT NO. 22**

On August 7, 2013, an undeterred Sayid followed up with an email that states "[w]e have several executed copies of the debt settlement agreement," lists 5 separate documents, and explained, "I can forward them to you as well." Reynolds Ex. 22, NR0000918.

**SEC RESPONSE TO FACT NO. 22**

The Commission does not dispute this fact, but it does not create a material dispute of fact concerning Reynolds' necessary participation in the resale of Nouveau stock without restriction or his lack of investigation into Sayid's representations concerning the effective date of the debt settlement agreement. This email supports the Commission's claim that Sayid presented Reynolds with inconsistent information that contradicted Reynolds' ultimate decision to represent to Transfer Online that the effective date of the debt settlement agreement was July 17, 2012. Sayid's email purports that the debt settlement agreement was executed by the parties on five different dates. As Reynolds's "understanding was there was one agreement," SEC App., Tab 34, Reynolds Depo., 154:20-24, he knew there was only one real effective date. Sayid's claim to five execution dates, therefore, presented Reynolds with inconsistent information on the debt settlement agreement's effective date.

**FACT NO. 23**

Reynolds' response instructed Sayid to "send all of the executed agreements." Reynolds Ex. 23, NR0000931.

**SEC RESPONSE TO FACT NO. 23**

The Commission does not dispute this fact, but it does not create a material dispute of fact concerning Reynolds' necessary participation in the resale of Nouveau stock without

12

restriction or his lack of investigation into Sayid's representations concerning the effective date of the debt settlement agreement.

## FACT NO. 24

Sayid replied, "[t]hank you for reconsidering," and forwarded 4 separate agreements, dated June 4, 2012; June 7, 2012; July 17, 2012; and September 7, 2012; all the documents have filenames that include "SPAH," as opposed to "NHLI." *Id*.

## SEC RESPONSE TO FACT NO. 24

The Commission does not dispute this fact, but it does not create a material dispute of fact concerning Reynolds' necessary participation in the resale of Nouveau stock without restriction or his lack of investigation into Sayid's representations concerning the effective date of the debt settlement agreement. This email supports the Commission's claim that Sayid presented Reynolds with inconsistent information that contradicted Reynolds' ultimate decision to represent to Transfer Online that the effective date of the debt settlement agreement was July 17, 2012. Sayid's email purports to attach four copies of the debt settlement agreement executed on different dates, but the attached agreements are not executed by any party. Further, one of the purported dates, September 7, 2012, would not have met the one-year holding period for Rule 144 in August 2013. Further, these unexecuted agreements do not resolve the inconsistency of Sayid's claimed five execution dates or allow Reynolds to determine which of the purported five execution dates was the actual effective date of the agreement.

## FACT NO. 25

On August 8, 2013, Sayid emailed Reynolds, discussing the Nouveau opinion letter, stating that Sayid "ha[d] the July 17, 2012, September 7, 2012 signature pages let me know what else you need to draft the legal opinion." Reynolds Ex. 24, NR0000080.

### SEC RESPONSE TO FACT NO. 25

The Commission does not dispute this fact, but it does not create a material dispute of fact concerning Reynolds' necessary participation in the resale of Nouveau stock without restriction or his lack of investigation into Sayid's representations concerning the effective date of the debt settlement agreement. This email supports the Commission's claim that Sayid presented Reynolds with inconsistent information that contradicted Reynolds' ultimate decision to represent to Transfer Online that the effective date of the debt settlement agreement was July 17, 2012. Sayid's email purports he has signature pages for two agreements – one which met the one-year holding period (July 17, 2012) and one that did not (September 7, 2012). Further, Sayid had already presented Reynolds with a fully executed agreement dated September 25, 2012 that Reynolds twice rejected for failing to meet the one-year period. So, at this point, Sayid claimed to have execution pages for three agreements, two of which did not meet the one-year holding period. Moreover, Sayid's representations do not resolve the inconsistency of Sayid's claimed five execution dates or allow Reynolds to determine which of the purported five execution dates was the actual effective date of the agreement.

### FACT NO. 26

The various versions of the debt settlement agreements, attached to Sayid's August 7, 2013 email to Reynolds, reflect increased amounts owed to Sayid over time. SEC Tab 42, Reynolds Dep. Ex. 149.

| Date | Amount of assignment | Balance owed to Sayid | Shares authorized per Entity |
|---|---|---|---|
| June [4], 2012 | 30,000 | 157,975 | 10,000,000 |
| June 7, 2012 | 30,000 | 157,975 | 10,000,000 |
| July 17, 2012 | 50,000 | 180,350 | 16,666,666 |

| Date | Amount of assignment | Balance owed to Sayid | Shares authorized per Entity |
|---|---|---|---|
| Sept. 7, 2012 | 50,000 | 195,275 | 16,666,666 |
| Sept. 25, 2012 | 50,000 | 327,690 | 16,666,666 |

### SEC RESPONSE TO FACT NO. 26

The Commission does not dispute this fact, but it does not create a material dispute of fact concerning Reynolds' necessary participation in the resale of Nouveau stock without restriction or his lack of investigation into Sayid's representations concerning the effective date of the debt settlement agreement. There is no evidence Reynolds considered this information in determining the real effective date of the Nouveau debt settlement agreement. Reynolds testified that his basis for picking the one effective date of the Nouveau debt settlement agreement among the five purported execution dates that Sayid had presented to him was to ask Sayid which date he would prefer to use. SEC App., Tab 34, Reynolds Depo., 156:14-158:3; *see also* Reynolds Resp. to SEC SoF, ¶73 ("Reynolds does not dispute . . . [he] asked Sayid which date he would prefer to use.").

### FACT NO. 27

Reynolds understood the increase in amounts owed to Sayid to have resulted from Nouveau incurring additional legal fees. SEC Tab 34, Reynolds Dep. Tr. 154:6–12.

### SEC RESPONSE TO FACT NO. 27

The Commission does not dispute this understanding of the amounts within the agreements, but Reynolds further clarified seconds later that, despite the multiple drafts showing those changing amounts, his "understanding was there was one agreement." SEC App., Tab 34, Reynolds Depo., 154:20-24. Further, there is no evidence Reynolds considered this information in determining the real effective date of the Nouveau debt settlement

15

agreement. Reynolds testified that his basis for picking the one effective date of the Nouveau debt settlement agreement among the five purported execution dates that Sayid had presented to him was to ask Sayid which date he would prefer to use. SEC App., Tab 34, Reynolds Depo., 156:14-158:3; *see also* Reynolds Resp. to SEC SoF, ¶73 ("Reynolds does not dispute . . . [he] asked Sayid which date he would prefer to use.").

## FACT NO. 28

Reynolds and Sayid communicated by telephone as well as email around the time Reynolds was conducting further inquiry regarding the execution pages and execution date of the debt settlement agreement. Reynolds Ex. 25, NR0000493.

## SEC RESPONSE TO FACT NO. 28

The Commission does not dispute this stated fact, but it does not create a material dispute of fact concerning Reynolds' necessary participation in the resale of Nouveau stock without restriction or his lack of investigation into Sayid's representations concerning the effective date of the debt settlement agreement. Indeed, there is only one thing Reynolds obtained from Sayid that assisted Reynolds in determining the real effective date of the Nouveau debt settlement agreement: Reynolds testified that his basis for picking the one effective date of the Nouveau debt settlement agreement among the five purported execution dates that Sayid had presented to him was to ask Sayid which date he would prefer to use. SEC App., Tab 34, Reynolds Depo., 156:14-158:3; *see also* Reynolds Resp. to SEC SoF, ¶73 ("Reynolds does not dispute . . . [he] asked Sayid which date he would prefer to use.").

## FACT NO. 29

Sayid wrote on August 9, 2013: "Attached please find the corrected Debt Sett Agmt and the executed signature page for July 17th, 2013." Reynolds Ex. 6 NR0000048. The email

attached the July 17, 2012, debt settlement agreement, and signature page executed by the three assignee creditors that is dated "2012 – 09 – 07." *Id.*

### SEC RESPONSE TO FACT NO. 29

The Commission does not dispute this fact, but it does not create a material dispute of fact concerning Reynolds' necessary participation in the resale of Nouveau stock without restriction or his lack of investigation into Sayid's representations concerning the effective date of the debt settlement agreement. This email supports the Commission's claim that Sayid presented Reynolds with inconsistent information that contradicted Reynolds' ultimate decision to represent to Transfer Online that the effective date of the debt settlement agreement was July 17, 2012. Sayid's email purports to attach an executed copy of the July 17, 2012 debt settlement agreement, but the document is not executed by Nouveau or Sayid, and the Belizean entities' signature is dated September 7, 2012, a date that would not have met the one-year holding period for Rule 144 in August 2013. Further, this partially executed agreement does not resolve the inconsistency of five execution dates or allow Reynolds to determine which of the five execution dates was the actual effective date of the agreement.

### FACT NO. 30

On August 9, 2013, Reynolds asked Sayid to provide "the current outstanding share number for SPAH." Reynolds Ex. 26, NR0000500. Sayid responded: "162,500,000." Reynolds again followed up to clarify whether that number represented shares "issued or outstanding," because that distinction bears on the Rule 144 analysis as well. *Id.*

### SEC RESPONSE TO FACT NO. 30

The Commission does not dispute that Reynolds asked Sayid for share information, but the last quote from Reynolds is not accurate. Reynolds' question was "please confirm this is

outstanding and not issued and outstanding."   In any event, there is no evidence that this work assisted Reynolds in determining the real effective date of the Nouveau debt settlement agreement.  Reynolds testified that his basis for picking the one effective date of the Nouveau debt settlement agreement among the five purported execution dates that Sayid had presented to him was to ask Sayid which date he would prefer to use.  SEC App., Tab 34, Reynolds Depo., 156:14-158:3;  *see also* Reynolds Resp. to SEC SoF, ¶73 ("Reynolds does not dispute . . . [he] asked Sayid which date he would prefer to use.").

## FACT NO. 31

Dale Henry, Nouveau's president, obtained a report of the outstanding shares from Nouveau's transfer agent and provided it to Sayid.  Reynolds Ex. 31, Henry Dep. Ex. 19 (Henry transmitting Transfer Online's report to Sayid on August 5, 2013).

## SEC RESPONSE TO FACT NO. 31

The Commission does not dispute this fact, but it does not create a material dispute of fact concerning Reynolds' necessary participation in the resale of Nouveau stock without restriction or his lack of investigation into Sayid's representations concerning the effective date of the debt settlement agreement.  Further, this email was sent before Reynolds request for share information asserted in paragraph 30 and, therefore, was not in response to that request.

## FACT NO. 32

Reynolds transmitted his letter to Sayid on August 9, 2013, and instructed: "Please check my facts.  If they are correct, you may send the letter to Transfer Online, Inc."  Reynolds Ex. 27, NR00000893.  Sayid replied within the hour: "I have to double check [the facts] with Dale Henry and then [Transfer Online]."  *Id*.

## SEC RESPONSE TO FACT NO. 32

The Commission does not dispute this fact, but there is no evidence that this request assisted Reynolds in determining the real effective date of the Nouveau debt settlement agreement. Reynolds testified that his basis for picking the one effective date of the Nouveau debt settlement agreement among the five purported execution dates that Sayid had presented to him was to ask Sayid which date he would prefer to use. SEC App., Tab 34, Reynolds Depo., 156:14-158:3; *see also* Reynolds Resp. to SEC SoF, ¶73 ("Reynolds does not dispute . . . [he] asked Sayid which date he would prefer to use."). Reynolds made this request to check facts in Reynolds Ex. to Sayid – the same person who represented to Reynolds that there were five execution dates for the debt settlement agreement after Reynolds had twice rejected the same agreement executed on September 25, 2013 for failing to meet Rule 144's one-year holding period. As the Court noted in denying Reynolds' motion to dismiss, "Reynolds cannot escape liability by claiming he relied entirely on Sayid where . . . he not only failed to investigate the truth of the statements, but also ignored evidence that directly contradicted the statements in his letters." *See SEC v. Sayid*, 17-cv-2630 (JFK), 2018 WL 357320, at *4 (S.D.N.Y. Jan. 10, 2018).

## FACT NO. 33

On August 11, 2013, Sayid wrote to Reynolds: "Here is the executed Debt Settlement Agreement dated July 17, 2012." Reynolds Ex. 7, NR0000063.

## SEC RESPONSE TO FACT NO. 33

The Commission does not dispute this fact, but it does not create a material dispute of fact concerning Reynolds' necessary participation in the resale of Nouveau stock without restriction or his lack of investigation into Sayid's representations concerning the effective date

of the debt settlement agreement.  This email supports the Commission's claim that Sayid

presented Reynolds with inconsistent information that contradicted Reynolds' ultimate decision

to represent to Transfer Online that the effective date of the debt settlement agreement was July

17, 2012.  Sayid's email purports to attach an executed copy of the July 17, 2012 debt

settlement agreement, but Nouveau's President has struck out the date below his signature and

the document is not executed by the Belizean entities.  Further, this partially executed

agreement does not resolve the inconsistency of five execution dates or allow Reynolds to

determine which of the five execution dates was the actual effective date of the agreement.

## FACT NO. 34

Reynolds followed up on Monday, August 12, 2013 (7:01 am), because the document

Sayid had sent Reynolds was incomplete, stating to Sayid that Reynolds needed "the signatures

of the Assignee Creditors, as well."  Reynolds Ex. 8, NR0000406.

## SEC RESPONSE TO FACT NO. 34

The Commission does not dispute this fact, but it does not create a material dispute of

fact concerning Reynolds' necessary participation in the resale of Nouveau stock without

restriction or his lack of investigation into Sayid's representations concerning the effective date

of the debt settlement agreement.  Reynolds' request for a missing signature page for the July

17, 2012 debt settlement agreement did nothing to resolve the inconsistency of five execution

dates or allow Reynolds to determine which of the five execution dates was the actual effective

date of the agreement.

## FACT NO. 35

Sayid responded to Reynolds' request for the signatures of the Assignee Creditors on

August 12, 2013, with an email attaching the signature page for those entities, explaining: "My

apologies, I thought I had forwarded it to you." Reynolds Ex. 28, NR0000485.

## SEC RESPONSE TO FACT NO. 35

The Commission does not dispute this fact, but it does not create a material dispute of fact concerning Reynolds' necessary participation in the resale of Nouveau stock without restriction or his lack of investigation into Sayid's representations concerning the effective date of the debt settlement agreement. Sayid's response to Reynolds' request for a missing signature page for the July 17, 2012 debt settlement agreement did nothing to resolve the inconsistency of five execution dates or allow Reynolds to determine which of the five execution dates was the actual effective date of the agreement.

## FACT NO. 36

If Reynolds had not received the completed agreement, he would have withdrawn his letter. SEC Tab 34, Reynolds Dep. Tr. 168:21–169:6.

## SEC RESPONSE TO FACT NO. 36

The Commission does not dispute that Reynolds said he would have withdrawn his letter, but his testimony is inadmissible speculation. Further, Reynolds' speculation about what he would have done does not create a material dispute of fact concerning Reynolds' necessary participation in the resale of Nouveau stock without restriction or his lack of investigation into Sayid's representations concerning the effective date of the debt settlement agreement. That Reynolds might have withdrawn his letter did nothing to resolve the inconsistency of five execution dates or allow Reynolds to determine which of the five execution dates was the actual effective date of the agreement.

## FACT NO. 37

When he issued the August 9, 2013 and September 6, 2013 Nouveau opinion letters,

Reynolds believed that the debt settlement agreement dated July 17, 2012, had been executed on July 17, 2012.  Reynolds Ex. 9, Reynolds Decl. ¶ 9; *see also* Reynolds Tr. 168:21– 169:6.

## SEC RESPONSE TO FACT NO. 37

For the purpose of this motion, the Commission does not dispute that Reynolds has manufactured this belief in a self-serving, post-discovery affidavit, which he submitted along with his opposition.  *See* Reynolds Ex. 9, ¶9.  The testimony Reynolds cites from his own deposition does not support his stated claim.  In this testimony, Reynolds says only that he believed that a signed copy of the July 17, 2012 agreement existed on August 9, 2013 because of representations he received from Sayid.  This deposition testimony does not say the Reynolds believed the document had been executed on July 17, 2012.  Further, even if the Court credits Reynolds' belief stated for the first time in opposing summary judgment, it does not create a dispute of material fact concerning Reynolds' failure to investigate the effective date of the debt settlement agreement.  The undisputed facts are that Sayid also told Reynolds that the parties had executed this same agreement on four other dates.  *See* Fact 22 and Response, *supra*.  And, because Reynolds's "understanding was there was one agreement," SEC App., Tab 34, Reynolds Depo., 154:20-24, he knew there was only one real effective date.  Reynolds' purported belief that the agreement had been executed on July 17, 2012 does not resolve the inconsistency of Sayid's claimed five execution dates or allow Reynolds to determine which of the purported five execution dates was the actual effective date of the agreement.  Indeed, Reynolds had already seen, and twice rejected, a fully executed agreement dated September 25, 2012 for failing to meet the one-year holding period.  Reynolds Resp. to SEC SoF, ¶¶44-50, 57-61.

## FACT NO. 38

Sayid sent Reynolds' letter to Dale Henry on August 11, 2013.  SEC Tab 6, Henry Tr. 214–215.  Henry reviewed the letter and on Tuesday August 13, 2013, sent it to Nouveau's transfer agent.  (*Id.*)

## SEC RESPONSE TO FACT NO. 38

The Commission  does not dispute this fact, but it does not create a material dispute of fact concerning Reynolds' necessary participation  in the resale of Nouveau stock without restriction  or his lack of investigation  into Sayid's representations  concerning the effective date of the debt settlement agreement.

## FACT NO. 39

Approximately  one month later, on September 6, 2013, Sayid emailed Reynolds  to ask for "another  legal opinion  for N[ouveau] (identical  in form to the one that you issued)." Reynolds  Ex. 34, NR0001203.  After again confirming  the number of Nouveau shares outstanding,  Reynolds  issued the second opinion  letter, dated September 6, 2013.  *Id.*; Reynolds Ex. 35, NR0001205.

## SEC RESPONSE TO FACT NO. 39

The Commission  does not dispute this fact, but it does not create a material dispute of fact concerning Reynolds' necessary participation  in the resale of Nouveau stock without restriction  or his lack of investigation  into Sayid's representations  concerning the effective date of the debt settlement agreement.

## FACT NO. 40

The debt settlement agreements were signed in counterparts.  SEC Tab 24, Sayid March 13 Tr. 355:4–10.

### SEC RESPONSE TO FACT NO. 40

The Commission does not dispute this fact, but it does not create a material dispute of fact concerning Reynolds' necessary participation in the resale of Nouveau stock without restriction or his lack of investigation into Sayid's representations concerning the effective date of the debt settlement agreement.

### FACT NO. 41

It is common for small issuers to execute agreements in counterparts. SEC Tab 38, Flynn Tr. 114:13–116:3.

### SEC RESPONSE TO FACT NO. 41

Flynn's testimony is that his recollection is that Reynolds said it was common for small companies to execute agreements in counterparts. The Commission objects to Flynn's testimony of what he thought Reynolds said as inadmissible hearsay. In any event, however, this inadmissible evidence does not create a material dispute of fact concerning Reynolds' necessary participation in the resale of Nouveau stock without restriction or his lack of investigation into Sayid's representations concerning the effective date of the debt settlement agreement.

### FACT NO. 42

It is common for small issuers to misplace signature pages to agreements. SEC Tab 38, Flynn Tr. 114:13–116:3.

### SEC RESPONSE TO FACT NO. 42

Flynn testified that his recollection is that Reynolds said it was common for small companies to misplace signature pages to agreements. The Commission objects to Flynn's

testimony of what he thought Reynolds said as inadmissible hearsay. Flynn also testified that his own experience is that small companies misplace signature pages. The Commission objects to Flynn's testimony of his own experience because it is irrelevant to determining Reynolds state of mind and conduct back in August 2013. In any event, this inadmissible evidence does not create a material dispute of fact concerning Reynolds' necessary participation in the resale of Nouveau stock without restriction or his lack of investigation into Sayid's representations concerning the effective date of the debt settlement agreement.

**FACT NO. 43**

Dale Henry, Nouveau's president, signed a letter dated September 5, 2013, addressed to the brokerage firm into which the Nouveau shares at issue were deposited. Reynolds Ex. 29, Henry Dep. Ex. 23.

**SEC RESPONSE TO FACT NO. 43**

The Commission does not dispute this fact, but it does not create a material dispute of fact concerning Reynolds' necessary participation in the resale of Nouveau stock without restriction or his lack of investigation into Sayid's representations concerning the effective date of the debt settlement agreement.

**FACT NO. 44**

That letter contained a statement reflecting that the shares in question had "been held (or the underlying debt has been held) for sufficient period to satisfy the requirements of Rule 144." *Id*.

**SEC RESPONSE TO FACT NO. 44**

The Commission does not dispute this fact, but it does not create a material dispute of fact concerning Reynolds' necessary participation in the resale of Nouveau stock without

restriction or his lack of investigation into Sayid's representations concerning the effective date of the debt settlement agreement.

## FACT NO. 45

Henry had not signed the September 25, 2012 or July 17, 2012 versions of the debt settlement agreement as of August 2, 2013. Reynolds Ex. 30, Henry Dep. Ex. 18 (Henry to Sayid no August 2, 2013, regarding the September 25, 2012 debt settlement agreement: "I noticed this was signed by all parties except me almost a year ago" (Reynolds is not copied on this email)); Reynolds Ex. 38, Henry Dep. Ex. 25 (reflecting Sayid asking Henry to sign July 17, 2012 version of debt settlement agreement on August 10, 2013 (Reynolds is not copied on this email)).

## SEC RESPONSE TO FACT NO. 45

The Commission does not dispute this fact, but it does not create a material dispute of fact concerning Reynolds' necessary participation in the resale of Nouveau stock without restriction or his lack of investigation into Sayid's representations concerning the effective date of the debt settlement agreement.

## FACT NO. 46

Henry also knew that the statements in his letter were necessary to effectuate the transaction. SEC Tab 6, Henry Tr. 207–08 ("And you knew that for the investors to deposit the shares with Titan [the brokerage], you have to make this representation. Right? Knew as a – okay. Yes.").

## SEC RESPONSE TO FACT NO. 46

The Commission does not dispute that Henry testified that the representations in his letter were necessary to have the shares deposited with Titan (rather than "effectuate the

transaction," which is vague and not supported by the quoted testimony).  This fact, however, does not create a material dispute of fact concerning Reynolds' necessary participation in the resale of Nouveau stock without restriction or his lack of investigation into Sayid's representations concerning the effective date of the debt settlement agreement.

### FACT NO. 47

The entities that received the shares from Sayid were controlled by Michael Affa. SEC Tab 51, Brown Tr. 241:17–22.

### SEC RESPONSE TO FACT NO. 47

The Commission does not dispute this fact, but it does not create a material dispute of fact concerning Reynolds' necessary participation in the resale of Nouveau stock without restriction or his lack of investigation into Sayid's representations concerning the effective date of the debt settlement agreement.

### FACT NO. 48

Sayid had been working with Affa and Mitchell Brown for over one year to turn his legal debt into securities, SEC Tab 28, Sayid Dep. Ex. 53, and had been working with Brown and Affa since at least February 2013 on their scheme, Reynolds Ex. 36, Brown Dep. Ex. 168; Reynolds Ex. 37, Sayid Dep. Ex. 53.

### SEC RESPONSE TO FACT NO. 48

The Commission objects to the first sentence of this statement fact as uninterpretable in terms of timing.  This statement does not have a start date from which "over a year" starts.  The Commission does not dispute that Sayid had previously attempted to sell stock of another issuer (Insight Management Corp.) to Affa and Brown (and others) through a similar debt settlement agreement, but that had nothing to do with Nouveau.  The emails cited in SEC App. Tab 28,

Sayid Ex. 53 are dated in June 2013, about two months before August 2013. The Commission also does not dispute the second sentence in this statement of fact that Sayid started working with Affa and Brown negotiating the sale of Nouveau stock through a debt settlement agreement starting in approximately February 2013. This fact, however, does not create a material dispute of fact concerning Reynolds' necessary participation in the resale of Nouveau stock without restriction or his lack of investigation into Sayid's representations concerning the effective date of the debt settlement agreement.

### FACT NO. 49

Mitchell Brown testified that he, Affa, Sayid, and someone named "Zeeshan" had agreed ahead of time as to how they would split up the proceeds of the unlawful sales of Nouveau shares: some to "marketing," some to Sayid, some to Andrew [Affa], and some to "the guy Zeeshan." SEC Tab 51, Brown Tr. 234–35.

### SEC RESPONSE TO FACT NO. 49

The Commission objects to this statement of fact as an inaccurate summary of Brown's testimony. In the pages cited, Brown recalls an explanation of how the proceeds of the sale were distributed. In any event, the testimony on these pages does not create a material dispute of fact concerning Reynolds' necessary participation in the resale of Nouveau stock without restriction or his lack of investigation into Sayid's representations concerning the effective date of the debt settlement agreement.

### FACT NO. 50

Mitchell Brown had never met Norman Reynolds, did not know who he was, and Brown never intended to share any of the proceeds with Reynolds. SEC Tab 51, Brown Tr. 252:4–17.

## SEC RESPONSE TO FACT NO. 50

The Commission does not dispute Brown testified that he did not know and had not met Reynolds. The Commission objects to the statement that Brown "never intended" to share proceeds with Reynolds. Brown's exact testimony was that he did not "expect" to share proceeds with Reynolds. This lack of expectation was natural considering that (i) Brown asked Sayid to find the lawyer to write the opinion letter, SoF,¶43, (ii) pursuant to that request, Sayid engaged Reynolds, *Id.*, ¶¶43-50, and (iii) Brown was apparently not directly involved in that part of the scheme. Further, Reynolds sought payment of unpaid bills from Sayid, which Sayid told Reynolds would be paid from the sale of shares following Reynolds issuance of a Rule 144 letter, and Reynolds followed up to pursue money from those sales. *See* SEC App., Tab 43, Reynolds IT – Day Two, 276:10-283:15 (admitting to sending email to Sayid in August 2013 seeking information about "funding efforts" to get paid, and Sayid responding "we need your Rule 144 legal opinion to convert the debt to equity and free up the shares," and "sell shares get paid."); *id.*, 341:4-8 (admitting to sending email to Sayid on September 7, 2013 telling Sayid to wire payment "when you receive your funds next week"). In any event, the testimony on these pages does not create a material dispute of fact concerning Reynolds' necessary participation in the resale of Nouveau stock without restriction or his lack of investigation into Sayid's representations concerning the effective date of the debt settlement agreement.

Respectfully submitted,

//s// R. M. Harper II
Richard M. Harper II (Admitted *Pro Hac Vice*)
Michael J. Vito (Admitted *Pro Hac Vice*)
Dahlia Rin (Admitted *Pro Hac Vice*)
**SECURITIES AND EXCHANGE COMMISSION**
Boston Regional Office
33 Arch Street
Boston, MA 02110

(617) 573-8979 (Harper direct)
(617) 573-4590 (fax)
harperr@sec.gov (Harper email)

**CERTIFICATE OF SERVICE**

I, Richard M. Harper II, hereby certify that this document was served on the defendants' counsel by ECF on February 11, 2019.


//s/ /Richard M. Harper
Richard M. Harper II


Dated:  February 11, 2019